## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHARON KLEIN, individually and on behalf of all others similarly situated, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.  16-11542 |
| | ) |
| AMERICAN SCIENCE AND ENGINEERING, INC., CHARLES P. DOUGHERTY, HAMILTON W. HELMER, DON R. KANIA, JOHN SANDERS, ROBERT N. SHADDOCK, MARK S. THOMPSON, and JENNIFER VOGEL, | ) CLASS ACTION COMPLAINT ) ) ) JURY DEMAND ) ) |
| | ) |
| Defendants. | ) ) ) ) ) ) |

Plaintiff Sharon Klein ("Plaintiff"), by her undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     Plaintiff brings this class action individually and on behalf of the public stockholders of American Science and Engineering, Inc. ("AS&E" or the "Company") against the members of AS&E's Board of Directors (the "Board" or the "Individual Defendants") and AS&E (together with the Individual Defendants, "Defendants") for their breaches of fiduciary duty in connection with the sale of AS&E to OSI Systems, Inc. ("OSI"). Specifically, the Defendants are soliciting stockholder approval of the sale of the Company through a proxy

statement that omits to state material facts necessary to make the statements therein not false or misleading. Stockholders need this material information to decide whether to tender their shares or pursue their appraisal rights.

2.      On June 21, 2016, AS&E announced that it has entered into a definitive agreement (the "Merger Agreement") with OSI. Under the terms of the Merger Agreement, OSI, through its wholly-owned subsidiary Apple Merger Sub, Inc. ("Merger Sub"), will acquire all of the outstanding shares of AS&E in an all-cash transaction valued for $37 per share of AS&E stock (the "Merger Consideration") or approximately $269 million in total (the "Proposed Transaction"). The stockholder vote on the Proposed Transaction is scheduled for August 31, 2016.

3.      On July 15, 2016, the Company filed a Schedule 14A definitive proxy statement (the "Proxy Statement") with the U.S. Securities & Exchange Commission ("SEC"). The Proxy Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information about (i) the process leading to the Merger Agreement; (ii) the financial analysis of Evercore Group L.L.C. ("Evercore"), the Board's financial advisor; and (iii) the Company's financial projections. Without all material information AS&E stockholders cannot make an informed decision about whether to vote in favor of the Proposed Transaction or pursue their appraisal rights.

4.      In addition, the Individual Defendants (defined below) have breached their fiduciary duties by conducting an inadequate sales process and agreeing to a transaction that provides the Company's stockholders with inadequate consideration. As detailed further *infra*, the Merger Consideration undervalues AS&E and fails to account for the Company's strong positioning for future growth, as well as the synergies between the AS&E and OSI.

2

5.     The Individual Defendants furthered exacerbated their breaches of fiduciary duty by agreeing to lock up the Proposed Transaction with deal protection devices that preclude other bidders from making a successful competing offer for the Company. Specifically, pursuant to the Merger Agreement, Individual Defendants agreed to a slate of deal protection devices including, *inter alia*: (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirors or even continuing discussions and negotiations with potential acquirors; (ii) a provision that provides OSI with four business days to match any competing proposal if one is made; and (iii) a termination fee provision that requires the Company to pay OSI $11 million in order to enter into a transaction with a superior bidder. These provisions substantially and improperly limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives including a sale of all or part of AS&E to a third party.

6.     For these reasons and as set forth in detail herein, the Individual Defendants have breached their fiduciary duties. Furthermore, as alleged further herein, OSI and its subsidiary aided and abetted the Individual Defendants' breaches of fiduciary duty.   Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of their fiduciary duties. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because Plaintiff is a citizen of New Jersey and all Defendants are citizens of other states.

8.      This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

9.      Venue is proper in this district because nominal defendant AS&E is incorporated in this district, and one or more of the Defendants reside, are found, have agents and/or regularly transact business in this District as provided in 28 U.S.C. § 1391(b) and (c).

## PARTIES AND RELEVANT NON-PARTIES

10.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of AS&E. Plaintiff is a citizen of New Jersey.

11.     Defendant AS&E is a Massachusetts corporation, and maintains its principal executive offices at 829 Middlesex Turnpike, Billerica, Massachusetts 01821.

12.     Defendant Charles P. Dougherty ("Dougherty") was named President and Chief Executive Officer ("CEO") of AS&E in 2013, and has served as a director since then as well. Dougherty is a citizen of Pennsylvania.

13.     Defendant Hamilton W. Helmer ("Helmer") was elected Chairman of the Board in 2015 and has served as a director of the Company since 1993. Helmer is a citizen of California.

14.     Defendant Don R. Kania ("Kania") has been a director of the Company since February 2010. Kania is a citizen of Oregon.

15.     Defendant John Sanders ("Sanders") was elected a director of the Company in May 2015. Sanders is a citizen of Washington, D.C. and Massachuesetts.

16.     Defendant Robert N. Shaddock ("Shaddock") was appointed a Director of the Company in June 2014. Shaddock is a citizen of Pennsylvania.

4

17.     Defendant Mark S. Thompson ("Thompson") has been a director of the Company since November 2005. Thompson is a citizen of California.

18.     Defendant Jennifer Vogel ("Vogel") was appointed a director of the Company in April 2013. Vogel is a citizen of Texas.

19.     Non-Party OSI, a Delaware corporation, is a vertically integrated designer and manufacturer of specialized electronic systems and components for critical applications in the homeland security, healthcare, defense and aerospace industries.

20.     Non-Party Merger Sub, a Massachusetts corporation, is a wholly-owned subsidiary of OSI, was created for the purposes of effectuating the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action individually and as a class action under Federal Rule of Civil Procedure 23 on behalf of all persons and/or entities that own AS&E common stock (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have a controlling interest.

22.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. According to the Proxy Statement, as of July 14, 2016, the Company had 7,138,104 shares of common stock outstanding. All members of the Class may be identified from records maintained by AS&E or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in class actions.

23. Questions of law and fact are common to the Class, including, *inter alia*, the following:

(i)     Have the Defendants solicited stockholder approval of the Proposed Transaction with a materially false, misleading and/or incomplete proxy statement;

(ii)    Is the Class entitled to injunctive relief or damages as a result of Defendants' wrongful conduct;

(iii)   Whether Defendants have disclosed and will disclose all material facts about the Proposed Transaction to stockholders;

(iv)    Have the Individual Defendants breached their fiduciary duties of loyalty and/or care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(v)     Have the Individual Defendants breached their fiduciary duty to obtain the highest value reasonably available for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(vi)    Have the Individual Defendants, in bad faith and for improper motives, impeded or erected barriers to discourage other strategic alternatives including competing offers for the Company or its assets; and

(vii)   Whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

24.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

25.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

26.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## **INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES**

27.     Individual Defendants as officers and/or directors of the Company stand in a fiduciary relationship to Plaintiff and the Company's other public stockholders and owes them the highest fiduciary obligations of good faith, due care and loyalty.

28.     Under Massachusetts law, the directors and officers of a publicly traded corporation have fiduciary duties of loyalty, good faith, and due care to stockholders.  To diligently comply with their fiduciary duties, the Individual Defendants may not take any action that:

29.     To comply with their fiduciary duties, the Individual Defendants may not take any action that:

> (a)     adversely affects the value provided to the corporation's stockholders;

> (b)     favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

> (c)     adversely affects their duty to search and secure the best value reasonably available under the circumstances for the corporation's stockholders; and/or

(d)    will provide the Individual Defendants with preferential treatment at the expense of, or separate from, the public stockholders.

30.    In accordance with their duties of loyalty and good faith, the Individual Defendants are obligated to refrain from:

(a)    participating in any transaction where the Individual Defendants' loyalties are divided;

(b)    participating in any transaction where the Individual Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public stockholders of the corporation; and/or

(c)    unjustly enriching themselves at the expense or to the detriment of the public stockholders.

31.    In the context of selling the Company such as in the Proposed Transaction, the Individual Defendants' fiduciary duties obligated them to, *inter alia*, act reasonably to maximize stockholder value and disclose all material information to stockholders.

32.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of care, loyalty, good faith and candor owed to Plaintiff and the other public stockholders of AS&E.

## FURTHER SUBSTANTIVE ALLEGATIONS

*AS&E Background*

33.    AS&E was formed in 1958, and develops, manufactures, markets, and sells X-ray inspection and other detection products for homeland security, force protection, public safety, and other critical defense and security applications. AS&E also provides

maintenance, warranty, engineering, training and operator services related to these products.

***The Process Leading to the Proposed Transaction***

34.    On November 5, 2015, the Board "discussed the competitive environment, potential consolidation in the detection equipment industry and the effects that these factors may have on the Company." The Board also discussed strategic alternatives for the Company going forward, including possible acquisitions or a sale of the Company. To this end, the Board authorized the Company's management to retain a financial advisor and to report back to the Board on potential acquisitions or a sale. Subsequently, the Company's management retained Evercore as the Company's financial advisor.

35.    On February 4, 2016, Evercore reviewed certain strategic alternatives with the Board and, in response to a question by the Board, recommended that the Board consider a targeted outreach to potential partners were it to pursue a sales process.

36.    On February 9, 2016, Sanders was contacted by Deepak Chopra ("Chopra"), the President and CEO of OSI. Chopra informed Sanders that OSI was interested in making an offer to acquire the Company. Shortly thereafter, on February 10, 2016, Chopra contacted Dougherty and stated that OSI would be sending a written proposal subject to completion of a diligence investigation. On a follow-up call on February 12, 2016, with Dougherty, Chopra expressed the importance and potential for meaningful synergies that could inure for OSI.

37.    On February 17, 2016, OSI presented a written proposal to the Board, proposing an all-cash acquisition of the Company for a price between $32.00 and $37.00 per share of Company common stock. OSI's initial proposed offer represented a 39% to 61% premium to the closing price of the Company common stock on the day prior.

38.     The Board met on February 22, 2016, to discuss OSI's proposal, and came to a consensus that the proposed price range was not sufficient to commence negotiations. The Board directed Evercore to reach out to four potential strategic bidders in the detection equipment industry.

39.     On February 23, 2016, Dougherty informed Chopra that, while the Company was still considering the proposal, the current valuation range was not sufficient to engage in diligence, but a higher range might cause the Company to entertain further discussions. Chopra told Dougherty that OSI would be willing to increase the proposed purchase price range to between $37.00 and $42.00 per share of Company common stock, representing a 45% to 64% premium to the closing price of Company common stock on the day prior.

40.     Evercore contacted the four parties—Company A, Company B, Company C, and Company D—on February 24 and 25, 2016, to gauge their interest in a potential transaction with AS&E.

41.     On February 29, 2016, the Board discussed OSI's revised proposal of $37.00 to $42.00 per share and Evercore's outreach to the four other parties. With respect to the four parties, Evercore informed the Board that Company A and Company B had requested meetings to discuss a potential transaction and had received drafts of a confidentiality agreement, Company C had expressed interest in a potential transaction and had received a draft confidentiality agreement, and Company D had not responded to the initial outreach and "had expressed no interest in pursuing a transaction with the Company at that time." Subsequent to the Board meeting, OSI, Company A, Company B, and Company C entered into confidentiality agreements on March 3, 2016, March 7, 2016, and March 8, 2016, respectively.

42.    On March 23, 2016, OSI delivered revised proposal for an all-cash acquisition of the Company at a price of $35.00 to $38.00 per share of Company common stock. OSI's offer assumed the realization $14 million in annual synergies to be phased in over the next two years.

43.    On March 24, 2016, Company A delivered a letter proposing an all-cash acquisition at a range of $140 million to $150 million in enterprise value, which implied a price of $31.29 to $32.65 per share of Company common stock.

44.    At a March 28, 2016 Board meeting, Evercore informed the Board that Company B did not submit a written proposal, but had indicated that it would make a proposal in the range of $30.00 per share of Company common stock. The Board agreed that discussions should continue with OSI and Company A with emphasis on quantifying synergies that would support a higher purchase price. Later in the meeting, Kania informed the Board that he had received an unsolicited email from an executive of a manufacturing company not in the detection equipment industry but having related technology ("Company E"), indicating an interest in exploring a transaction with the Company. Shortly after the meeting, Company E was provided and executed a confidentiality agreement.

45.    On April 13, 2016, Company E informed representatives of Evercore that it would not be submitting an acquisition proposal, noting the lack of synergies between the two companies.

46.    On April 22, 2016, OSI delivered a revised all-cash offer for the Company at a price of $35.50 per share of Company common stock, which represented an approximate 21% premium to the closing price of the Company common stock the day prior. Three days later, on April 25, 2016, Company A delivered its offer for an all-cash acquisition at an enterprise value of $160 million, which implied a price of $34.11 per share of Company common stock.

47.     On April 25, 2016, Evercore informed the Board that it had received three unsolicited inquiries from financial sponsors concerning a potential acquisition of the Company, and reviewed a recently announced transaction in the same industry as AS&E and its impact on the ongoing negotiations.

48.     On May 5, 2016, the Board reviewed market developments and projected market growth, the Company's three-year strategic plan, and the Company's plans for future product developments and enhanced service offerings. Evercore also reviewed a preliminary financial analysis of the Company, including an illustrative analysis of how a financial sponsor might value the Company.

49.     On June 1, 2016, OSI delivered a revised offer for an all-cash acquisition of the Company at a price of $35.50 per share of Company common stock, which represented an approximate 11% premium over the Company's stock's closing price on that day. The next day, on June 2, 2016, Company A delivered a revised offer for an all-cash acquisition of the Company at an enterprise value of $175 million, which implied a price of $35.50 per share of Company common stock.

50.     On June 2, 2016, the Board held a meeting, at which it determined with the assistance of  Evercore that in light of current and recent trading prices of the Company common stock and various implied trading multiples OSI and Company A's most recent offers were insufficient.

51.     On June 5, 2016, Chopra contacted Dougherty to inform him that OSI would be submitting a revised bid the following day to acquire the Company at a price of $37.00 per share of Company common stock. The next day, OSI delivered the revised offer for $37.00 per share, which included a provision that prohibited the Company from declaring or paying dividends

after the execution of a definitive merger agreement. The revised offer of $37.00 per share represented a 13% premium to closing price of the Company common stock on June 6, 2016.

52.     On June 7, 2016, Company A delivered a letter proposing an all-cash acquisition of the Company at a price of $35.75 per share of Company common stock, which did not include any restrictions on declaring dividends.

53.     On June 9, 2016, OSI submitted a letter to the Company proposing an all-cash acquisition at a price of $37.00 per share of Company common stock, stating that the offer would expire on June 10, 2016, and included a seven business day period of exclusivity to complete due diligence and negotiate definitive documentation.

54.     Later that same day, at the direction of the Board, the Company executed OSI's June 9, 2016 letter.

55.     On June 20, 2016, the Board met to discuss and vote upon OSI's final proposal. At the meeting, the Board unanimously approved the Merger Agreement, which was executed later that evening. The next morning, the Company and OSI each issued a press release announcing the execution of the Merger Agreement before the U.S. stock markets opened.

***The Proposed Transaction***

56.     On June 21, 2016, AS&E announced that it has entered into the Merger Agreement with OSI, pursuant to which OSI, through its wholly-owned subsidiary Merger Sub, will acquire all of the outstanding shares of AS&E for $37 per shares with the Proposed Transaction having a total value of approximately $269 million. A stockholder vote on the Proposed Transaction is scheduled for August 31, 2016.

57.     On June 21, 2016, AS&E issued a press release announcing the Proposed Transaction.  The press release states in relevant part, as follows:

BILLERICA, Mass. – June 21, 2016 – American Science and Engineering, Inc. (NASDAQ: ASEI) ("AS&E" or the "Company"), a leading worldwide supplier of innovative X-ray inspection solutions, today announced that it has entered into a definitive agreement to be acquired by OSI Systems, Inc. (NASDAQ: OSIS) for $37.00 per share of AS&E common stock in an all-cash transaction, for a total transaction value of approximately $269 million. The transaction consideration represents a premium of approximately 25% based on the volume-weighted average closing stock price for the 90 days up to and including June 20, 2016. The transaction and the merger agreement were unanimously approved by AS&E's Board of Directors.

AS&E noted that the transaction is the culmination of a strategic review process in which the Company, with the assistance of its independent financial and legal advisors, thoroughly reviewed a range of options to maximize shareholder value.

"We are pleased to have reached this agreement with OSI Systems, which provides our shareholders with a compelling cash value and follows a thorough review of strategic alternatives for the Company," said Chuck Dougherty, AS&E's President and Chief Executive Officer. "After a careful assessment of conditions in our markets worldwide, the Board determined that entering into this transaction was in the best interest of our shareholders."

He continued, "The combination of AS&E and OSI Systems will create a leader in Cargo and Aviation security screening platforms, offering customers and business partners a complete range of scanning solutions to meet their evolving security and operational requirements. Additionally, the collective scale, technology capabilities, and mutual channel strengths of the combined businesses will enable the Company to provide customers and business partners with an enhanced set of competitive products and services."

Hamilton W. Helmer, AS&E's Chairman of the Board of Directors, said, "This transaction is a testament to the great team at AS&E. Together, they have built a highly successful company with a more than five decades' long heritage of innovation and technological expertise. Strategically, this is the right time to pursue this combination because it brings together enhanced scale and complementary portfolio offerings that will strengthen the combined businesses' position in inspection services and technologies."

Deepak Chopra, OSI Systems' Chairman and Chief Executive Officer, commented, "AS&E's backscatter X-ray technology has long been a leader within the security industry, and its cutting-edge products, extensive service network, and premier customer base are highly complementary to our current operations. We look forward to welcoming AS&E's talented team to OSI Systems and we expect to maintain AS&E's current operations in Billerica, MA as an essential part of an expanded security scanning business unit."

The transaction is subject to approval of AS&E shareholders, regulatory approval, and other customary closing conditions. The transaction is expected to be completed by the end of 2016.

***The Proxy Statement Fails to Disclose Material Information to the Company's Stockholders.***

58.     In an attempt to secure stockholder support for the Proposed Transaction, on July 15, 2016, Defendants caused to be filed the materially false and misleading Proxy Statement that recommends that AS&E stockholders vote their shares in favor of the Proposed Transaction.  As set forth below in detail, the Proxy Statement omits material information about the Proposed Transaction that must be disclosed to the Company's stockholders to enable them to make a fully informed decision.  This omitted information, if disclosed, would significantly alter the total mix of information available to them.  The Proxy Statement fails to provide the Company's stockholders with material information and/or provides them with materially misleading information thereby rendering the stockholders unable to cast a fully informed vote regarding the Proposed Transaction.

59.     The Proxy Statement omits material information with respect to the process and events leading up to the execution of the Merger Agreement, including:

(a)     The Proxy Statement fails to disclose the strategic alternatives available to the Company that were presented by Evercore at the February 4, 2016 Board meeting;

(b)     The Proxy Statement fails to disclose the basis for the Board's determination that OSI's February 17, 2016 proposal to acquire AS&E for a price between $32.00 and $37.00 per share was insufficient;

(c)     The Proxy Statement states that Company D "expressed no interest in pursuing a transaction with the Company at that time" but does not disclose whether Company D was interested in pursuing a transaction at a later date.

(d)     The Proxy Statement fails to disclose the Board's estimated value of the synergies for each of OSI, Company A, and Company C, and its basis for believing that there were synergies that could support a higher valuation for the Company;

(e)     The Proxy Statement fails to disclose Evercore's analysis as to the impact that the recently announced transaction discussed at the April 25, 2016 Board meeting had on the negotiations of the Proposed Transaction;

(f)     The Proxy Statement fails to disclose the analysis that Evercore presented to the Board with respect to how a financial sponsor might value the Company;

(g)     The Proxy Statement fails to disclose whether the Board intended to declare any dividends after the execution of a merger agreement prior to entering into the Merger Agreement, which prohibits any dividend, and the anticipated value of any potential dividend payments; and

(h)     The Proxy Statement fails to disclose the Board's basis for determining that OSI and Company A's proposals to acquire the Company for $35.50 reviewed at the June 2, 2016 Board meeting were insufficient.

60.     The Proxy Statement also omits material information with respect to the financial matters disclosed therein, including the analyses conducted by AS&E's financial advisor, Evercore.  The failure to disclose is particularly acute given that the information that should be provided to stockholders is set forth in the presentations made by Evercore to the Board. With respect to Evercore, in rendering its fairness opinion, the Proxy Statement indicates Evercore's position that "as of that date [June 20, 2016] based upon and subject to the assumptions, qualifications and limitations set forth in its opinion, the merger consideration to be received by the holders of Company common stock was fair, from a financial point of view, to such holders."

Based on the completion of such a narrowly prescribed fairness opinion, as set forth herein, the Proxy Statement fails to provide adequate information to evaluate both the Proposed Transaction and Evercore's analysis thereof as follows:

*Summary of Proposal*

(a)     The Proxy Statement fails to disclose AS&E's fully diluted shares, equity value (at the unaffected price and the offer) and enterprise value (at the unaffected price and the offer); and

(b)     The Proxy Statement fails to disclose if AS&E's pricing multiples were calculated, and if so, what they are.

*Selected Companies Analysis*

(a)     The Proxy Statement fails to disclose the selection criteria for the companies;

(b)     The Proxy Statement fails to disclose the observed company-by-company pricing multiples and financial metrics examined by Evercore; and

(c)     The Proxy Statement fails to disclose if other multiples were examined by Evercore, and it so, what they were.

*Selected Transactions Analysis*

(a)     The Proxy Statement fails to disclose the selection criteria for the transactions;

(b)     The Proxy Statement fails to disclose the observed transaction-by-transaction enterprise values, pricing multiples and financial metrics;

(c)     The Proxy Statement fails to disclose if other multiples or transactions were examined by Evercore, and it so, what they were; and

17

(d)    The Proxy Statement fails to explain the apparent inconsistency of Evercore's use of apparently unadjusted EBITDA for the transactions, as compared to adjusted EBITDA for ASEI and the companies reviewed in the Selected Companies Analysis.

*Discounted Cash Flow Analysis*

(a)    The Proxy Statement fails to disclose the formula or definition of "unlevered free cash flows" used by Evercore;

(b)    The Proxy Statement fails to identify all assumptions underlying Evercore's estimate of AS&E's WACC, as well as the basis for each assumption; and

(c)    The Proxy Statement fails to explain the use of terminal EBITDA multiples well below the median figures of the Selected Companies and Selected Transactions.

*Premiums Paid Analysis*

(a)    The Proxy Statement fails to disclose the number of transactions constituting Evercore's sample; and

(b)    The Proxy Statement fails to disclose the number of observations that were excluded because the indicated premiums were (i) less than 0%, or (ii) greater than 100%.

*Financial Projections*

(a)    The Proxy Statement fails to disclose AS&E's net operating loss balances and utilization;

(b)    The Proxy Statement fails to disclose the basis for AS&E's financial projections using point-estimates of terminal value while the DCF analysis uses ranges of terminal value assumptions;

(c)    The Proxy Statement fails to disclose when the financial projections were prepared, as well as all line items of the projections;

(d)    The Proxy Statement fails to disclose, if there were prior financial projections, the results of any DCF analysis based on those prior projections;

(e)    The Proxy Statement fails to disclose the basis for management's stated belief that Fiscal Year 2016's backlog, bookings, and sales pipeline figures impact projected figures for 2020 and 2021, but not the figures for the intervening years; and

(f)    The Proxy Statement fails to disclose the results of the DCF sensitivity analysis identified on page 58 of the Proxy Statement.

### *The Inadequate Merger Consideration*

61.    The Proposed Transaction is unfair and significantly undervalues the Company. The offer price fails to sufficiently recognize the strategic benefits and synergistic value acquiring AS&E brings to OSI. As emphasized by Chopra, OSI's CEO, in the June 21, 2016 press release: "AS&E's backscatter X-ray technology has long been a leader within the security industry, and its cutting-edge products, extensive service network, and premier customer base are highly complementary to our current operations."  By acquiring AS&E, OSI expects to generate annual pretax synergies of at least $18 million within the first two years post-closing.

62.    In addition, the acquisition of AS&E is expected to be accretive to OSI's non-GAAP earnings per share in fiscal 2017, and at least 10% accretive to GAAP earnings per share in fiscal 2018. These benefits are not fairly recognized in the lowball price AS&E stockholders are to receive in the Proposed Transaction.

63.    Further indicative of the inadequacy of the Merger Consideration is the fact that the Company is being sold in the middle of a stock price dip right when it is positioned to return to profitability. The Merger Consideration represents a 20% discount to the Company's 52-week

high of $46.46. Indeed, as recently as January 14, 2016, the Company's common stock traded as high as $37.28.

64.    A little over a month prior to the announcement of the Proposed Transaction, on May 9, 2016, the Company announced free cash flow of $6.8 million in fiscal year 2016, which was a dynamic turnaround when compared to the Company's negative free cash flow of $13.7 million in fiscal year 2015. Commenting on the Company's year-end results, Dougherty stated:

> "Although external factors continued to adversely impact our results throughout the year, we responded by reducing operating expenses to align with the size and composition of the business. We believe that these cost containment actions — combined with the growth in bookings, the strength of our backlog, and our revitalized product and services portfolio — position us well to return to profitability as we enter fiscal year 2017. We remain committed to enhancing shareholder value and improving our results by managing operating costs and monitoring the global business environment as we continue to drive execution of our strategic initiatives."

65.    In addition, in each quarter of Fiscal Year 2016, the Company paid a $0.50 dividend per share. By entering into the Merger Agreement for inadequate consideration, the Board did not properly value stockholder dividends and deprived the stockholders from future dividends.

***Insiders Will Reap Unique Financial Benefits***

66.    In addition, while the Company's public stockholders are being largely cashed out for the inadequate Merger Consideration, Company management and certain members of the Board have secured special material benefits for themselves.

67.    As the Proxy Statement indicates, the Company's officers and directors will received lucrative payouts upon the consummation of the Proposed Transaction as a result of the acceleration of their unvested shares of restricted stock and modification of the terms of their unvested restricted stock units ("RSUs").

68.     Under the terms of the Merger Agreement, all unvested shares of restricted stock will immediately vest in full and each share of AS&E common stock underlying the restricted stock award will be canceled and converted into the right to receive from OSI an amount of cash equal to the per share Merger Consideration.

69.     Also under the terms of the Merger Agreement, each outstanding and unvested RSU award will be assumed by OSI and converted into an "Assumed RSU award" covering a number of shares of OSI common stock. However, any performance conditions of the Assumed RSU awards granted on or after April 1, 2015 will be treated as satisfied based on actual performance through the fiscal year ended March 31, 2016 with respect to one-third of the Assumed RSU award, satisfied based on "target level" performance with respect to one-third of the Assumed RSU award, and satisfied based on "target level" performance or actual performance through the fiscal year ended March 31, 2017 with respect to one-third of the Assumed RSU award (depending upon the closing date of the merger).

70.     According to the Proxy Statement, the value of the accelerated RS awards and RS Awards to the Board members and the executive officers are as follows:

| Name | Value of Shares of Unvested RS | Value of AS&E RSUs | Total Value |
|---|---|---|---|
| **Executive Officers** | — | | |
| Diane J. Basile | — | $98,864 | $98,864 |
| Laura B. Berman | — | $241,166 | $241,166 |
| Charles P. Dougherty | — | $1,477,040 | $1,477,040 |
| Kenneth J. Galaznik | — | $168,239 | $168,239 |
| David P. Hack | — | $221,260 | $221,260 |
| Lanning L. Levine | — | $388,389 | $388,389 |
| Michael J. Muscatello | — | $319,310 | $319,310 |
| Michael N. Tropeano | | $408,295 | $408,295 |
| **Non-Employee Directors** | | — | |
| Hamilton W. Helmer | $26,122 | — | $26,122 |

| | | | |
|---|---|---|---|
| Don R. Kania | $17,427 | — | $17,427 |
| John P. Sanders | $17,427 | — | $17,427 |
| Robert N. Shaddock | $17,427 | — | $17,427 |
| Mark S. Thompson | $17,427 | — | $17,427 |
| Jennifer L. Vogel | $17,427 | | $17,427 |
| **All Executive Officers and Non-Employee Directors as a Group** | $113,257 | $3,322,563 | $3,435,820 |

71.    In addition, certain of the Individual Defendants, as well as the other executive officers of the Company will become entitled to receive the following "Golden Parachute" benefits if they are terminated following the consummation of the Proposed Transaction:

| Name | Cash | Equity | Perquisites/Benefits | Total |
|---|---|---|---|---|
| Charles P. Dougherty | $2,207,115 | $1,477,040 | $36,019 | $3,720,174 |
| Diane J. Basile | $690,802 | $98,864 | $35,910 | $825,576 |
| Michael N. Tropeano | $941,585 | $408,295 | $13,737 | $1,363,617 |
| Lanning L. Levine | $629,318 | $388,389 | $32,625 | $1,050,332 |
| Michael J. Muscatello | $547,188 | $319,310 | $36,019 | $902,517 |

72.    These special benefits are not equally shared with the stockholders and provided an incentive for the Individual Defendants to not seek superior offers from other companies.

73.    The Proposed Transaction is wrongful, unfair, and harmful to AS&E's public stockholders, and represents an effort by the Individual Defendants to aggrandize their own financial position and interests at the expense of and to the detriment of the Class members. Specifically, Defendants are attempting to deny Plaintiff and the Class their stockholder rights through the sale of AS&E via an unfair process for an unfair price, and without adequate disclosure.  The Proposed Transaction will personally benefit the Individual Defendants and other AS&E insiders at the expense of AS&E's public stockholders.

22

***Preclusive Deal-Protection Devices***

74.     In addition, as part of the Merger Agreement, Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.

75.     The Merger Agreement contains a "No Solicitation" provision that restricts AS&E from considering alternative acquisition proposals by, *inter alia*, constraining the Company's ability to solicit or communicate with potential acquirers or consider their proposals. Specifically, Section 6.1 of the Merger Agreement prohibits AS&E from soliciting, encouraging, initiating or facilitating, inquiries or negotiations with respect to any Acquisition Proposal but permits the Board to consider an *unsolicited* proposal only if it constitutes or is reasonably calculated to lead to a "Superior Proposal" as defined in the Merger Agreement.  However, even the Board's consideration of an unsolicited proposal is restricted:  prior to considering any such proposal, the Board must determine, in consultation with its financial advisors, that its fiduciary duties *require* it to consider the proposal.  Thus, the Board cannot consider alternative proposals even if it reasonably believes that any such proposal would be beneficial to stockholders.

76.     Further, the Agreement unreasonably raises preclusive hurdles to the possibility of a topping offer from an unsolicited purchaser.  Defendants agreed to provide OSI substantial information rights to assist it in matching any other offer, thus providing OSI access to the unsolicited bidder's financial information and giving OSI the ability to match the superior offer (which would require AS&E to accept such matching offer).  Specifically, Section 6.1 of the Merger Agreement requires, should an unsolicited bidder submit a competing proposal, the Company notify OSI, within one business day, of the bidder's identity and the terms of the bidder's offer. Thereafter, should the Board determine to enter into a superior competing

proposal, it must grant OSI at least four business days in which the Company must negotiate in good faith with OSI (if OSI so desires) and allow OSI to amend the terms of the Merger Agreement to make a counter-offer so that its revised offer could match or beat the unsolicited superior offer. In other words, the Merger Agreement gives OSI access to any rival bidder's information and allows OSI a free right to top any superior offer simply by matching it. Accordingly, no rival bidder is likely to emerge and act as a stalking horse, because the Merger Agreement unfairly assures that any "auction" will favor OSI and piggy-back upon the due diligence of the foreclosed second bidder.

77. Moreover, the Merger Agreement contains additional provisions that unduly benefit OSI by making an alternative transaction either prohibitively expensive or otherwise impossible. For example, the Merger Agreement contains a termination fee provision that requires AS&E to pay $11 million to OSI if the Company decides to pursue the competing offer, thereby essentially requiring that the competing bidder agree to pay a larger naked premium for the right to provide the stockholders with a superior offer.

78. Further, all of AS&E's directors and executives have entered into support agreements binding them to vote in favor of the Proposed Transaction, and discouraging other offers as the Board's support has already been secured by OSI.

79. These preclusive deal protection devices, together with the support agreements, will all but ensure that no competing offer will be forthcoming.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### CLAIM FOR BREACH OF FIDUCIARY DUTY
### AGAINST DEFENDANTS

80.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

81.    As alleged herein, Defendants have failed to provide AS&E's stockholders with material information concerning the Proposed Transaction, including, *inter alia*, the potential conflicts of interest affecting the Company's management, the process leading to the Merger Agreement, the financial analysis of Evercore, and the Company's financial projections. Instead, Defendants are soliciting stockholders' votes via a materially misleading and incomplete Proxy Statement.

82.    Further, Defendants have accepted an offer to sell AS&E at a price that fails to reflect the true value of the Company, thus depriving common stock stockholders of the reasonable, fair and adequate value of their shares.  The Proposed Transaction consideration being offered and accepted represents a meager premium over the closing share price as compared to like transactions.  There is no indication the Proposed Transaction was the result of a competitive bidding process or arms'-length negotiation where all reasonably available synergistic acquirers were vetted.

83.    As such, unless the Individual Defendants' conduct is enjoined by the Court, they will continue to breach their fiduciary duties to Plaintiff and the other members of the Class, and will further a process that inhibits the maximization of stockholder value and the disclosure of material information.

84.    Plaintiff and the members of the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)    declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B)    Declaring and decreeing that the Merger Agreement was entered into in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

(C)    Enjoining Defendants from proceeding with the Proposed Transaction;

(D)    Enjoining Defendants from consummating the Proposed Transaction, or a business combination with a third party, unless and until the Company adopts and implements a procedure or process, such as an auction, to obtain the highest possible price for the Company;

(E)    Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of stockholders until the process for the sale or auction of the Company is completed and the highest possible price is obtained;

(F)    Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof;

(G)    Awarding Plaintiff and the Class appropriate damages;

(H)    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

(I)    Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues that may be properly heard by a jury.

Dated:  July 26, 2016                    s/ Mitchell J. Matorin
                                         Mitchell J. Matorin (BBO# 649304)
                                         **MATORIN LAW OFFICE, LLC**
                                         18 Grove Street, Suite 5
                                         Wellesley, MA 02482
                                         (781) 453-0100


**OF COUNSEL**

**LEVI & KORSINSKY LLP**
Joseph Levi, Esq.
Michael H. Rosner, Esq.
William J. Fields, Esq.
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171